USDC IN/ND case 2:20-cv-00160-PPS document 5 filed 03/19/20 page 1 of 14

45C01-2003-CT-000307
Lake Circuit Court

Filed: 3/19/2020 3:28 PM
Clerk
Lake County, Indiana

| | | |
|---|---|---|
| STATE OF INDIANA | ) | LAKE CIRCUIT/SUPERIOR COURT |
| | ) ss: | |
| COUNTY OF LAKE | ) | |

| | |
|---|---|
| CINTAS CORPORATION | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Cause No. |
| | ) |
| JUPITER ALUMINUM CORPORATION | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

The plaintiff, Cintas Corporation, states as follows for its complaint against the defendant, Jupiter Aluminum Corporation.

### Parties

1. Jupiter Aluminum Corporation ("Jupiter") is an Illinois corporation with its registered principal place of business at 1745-165th Street, Hammond, IN 46320.

2. Cintas Corporation ("Cintas") is a Nevada corporation with a principal office at 6800 Cintas Blvd., Cincinnati, OH 45262.

3. Cintas maintains a facility at 1303 Kenwood Street, Hammond, IN 46320 from which it provided services to Jupiter.

### Jurisdiction and Venue

4. Lake County is the location where the principal office of the defendant organization is located. Lake County is also the location of the office of the defendant organization to which the claim relates and out of which the claim arose.

5. Venue is proper in Lake County.

6. The Court has personal jurisdiction over the parties to this action.

1

7. Cintas asserts claims for breach of contract and quantum meruit (contract implied-in-fact) and quantum meruit (contract implied-in-law).

8. The Court has subject-matter jurisdiction to decide this case.

### Factual Allegations

9. On or about February 4, 2008 Jupiter and Cintas entered into a Flame Resistant Garment Service Agreement (the "Agreement").

10. A true and complete copy of the Agreement is attached hereto as Exhibit 1.

11. The Agreement was signed by an authorized representative of Jupiter.

12. The Agreement was signed by an authorized representative of Cintas.

13. The Agreement was a valid and enforceable contract.

14. Under the terms of the Agreement, Cintas agreed to acquire certain flame-resistant garments specific for the use of Jupiter.

15. The flame-resistant garments to be acquired under the Agreement were unique to the needs of Jupiter.

16. Cintas purchased the flame-resistant garments specifically for Jupiter's use.

17. Under the terms of the Agreement, Cintas agreed to rent the flame-resistant garments to Jupiter.

18. Under the terms of the Agreement, Jupiter agreed to pay Cintas certain enumerated weekly rental fees for flame-resistant garments.

19. Under the terms of the Agreement, Jupiter agreed to pay Cintas certain other specified charges.

20. Under its terms, the Agreement remained in effect for 60 months from the date of installation.

21. Under its terms, the Agreement automatically renewed for additional 60-month periods unless Jupiter notified Cintas to the contrary in writing 180 days in advance of the expiration of the then current term.

22. Jupiter did not notify Cintas of an intent to cancel the Agreement in writing 180 days in advance of the expiration of the original term.

23. The Agreement renewed for an additional 60-month period on or about February 4, 2013.

24. On July 8, 2013, Jupiter sent a letter to Cintas claiming that it was cancelling the Agreement.

25. Notwithstanding Jupiter's July 8, 2013 cancellation letter, Cintas continued to provide flame resistant garment services to Jupiter as Cintas had been providing under the Agreement.

26. Notwithstanding Jupiter's July 8, 2013 cancellation letter, Jupiter continued to receive and accept flame resistant garment services from Cintas as Jupiter had been receiving under the Agreement.

27. Notwithstanding Jupiter's July 8, 2013 cancellation letter, Jupiter continued to pay Cintas for flame resistant garment services as Jupiter had been paying under the Agreement.

28. Jupiter did not notify Cintas of an intent to cancel the Agreement in writing 180 days in advance of the expiration of the first renewal term.

29. The Agreement renewed for an additional 60-month period on or about February 4, 2018.

30. Jupiter notified Cintas on October 21, 2019 that Jupiter would be receiving new garment rental service effective October 25, 2019.

31. Jupiter's October 21, 2019 notice to Cintas did not provide 180 days' notice of its intent to cancel the contract.

32. Jupiter's October 21, 2019 notice to Cintas was not 180 days' notice in advance of the expiration of the then current term.

33. On or about October 22, 2019, Cintas delivered a letter to Jupiter notifying Jupiter that Cintas was willing to continue to provide flame resistant garment services.

34. On or about October 22, 2019, Cintas also notified Jupiter of its obligation under the Agreement to buy-back all non-standard garments that Cintas purchased on behalf of Jupiter.

35. On or about October 22, 2019, Cintas estimated the buy-back amount to be $672,974.30.

36. On October 30 and November 1, 2019, Cintas again notified Jupiter that Cintas was willing to continue to provide flame resistant garment services.

37. Cintas continued to provide flame resistant garment services to Jupiter until November 7, 2019.

38. Jupiter continued to receive and accept those services from Cintas until November 7, 2019.

39. On November 7, 2019, Jupiter notified Cintas that it was terminating Cintas's services effective immediately.

4

40. Jupiter's November 7, 2019 notice to Cintas did not provide 180 days' notice of its intent to cancel the contract.

41. Jupiter's November 7, 2019 notice to Cintas was not 180 days in advance of the expiration of the then current term.

42. On or about December 12, 2019, Cintas delivered a letter to Jupiter which notified Jupiter of past due invoices with a total balance of $98,010.90 ("Past Due Invoice Amount"). A true and correct copy of the letter is attached hereto as Exhibit 2.

43. The Cintas letter delivered on or about December 12, 2019 notified Jupiter of its obligation under the Agreement to buy-back all non-standard garments that Cintas purchased on behalf of Jupiter.

44. On or about December 12, 2019, Cintas notified Jupiter of a buy-back amount of $636,140.13 ("Buy-Back Amount").

45. On or about December 12, 2019, Cintas demanded payment of the Past Due Invoice Amount by December 16, 2019.

46. On or about December 12, 2019, Cintas demanded payment or an agreement as to the Buy-Back Amount by December 16, 2019.

47. On or about December 12, 2019, Cintas requested an agreement to arbitrate under the Agreement by December 16, 2019.

48. Jupiter has not paid the Past Due Invoice Amount demanded by Cintas on or about December 12, 2019.

49. Jupiter has not paid the Buy-Back Amount demanded by Cintas on or about December 12, 2019.

50. Jupiter has not agreed to arbitrate under the Agreement as requested by Cintas on or about December 12, 2019.

## Count I
## Breach of Contract

51. Cintas re-states paragraphs 1 through 50 above as if set forth in full herein.

52. The Agreement between Cintas and Jupiter is a contract.

53. The contract between Cintas and Jupiter is valid.

54. The contract between Cintas and Jupiter is enforceable.

55. The contract required Cintas to provide flame-resistant garment services to Jupiter.

56. Cintas provided flame resistant garment services to Jupiter.

57. Cintas performed its contractual obligations by providing flame-resistant garment services to Jupiter.

58. Jupiter materially breached the contract by providing less than 180 days' notice of its intent to terminate the contract.

59. Jupiter materially breached the contract when it failed and refused to pay for the flame-resistant garment services it received from Cintas.

60. Jupiter materially breached the contract by failing to pay for the flame-resistant garment services it received from Cintas.

61. Cintas materially performed its obligations under the contract.

62. Due to Jupiter's material breach of the contract, Cintas has sustained damages.

## Count II
## Quantum Meruit (Contract Implied-in-Fact)

63. Cintas re-states paragraphs 1 through 62 above as if set forth in full herein.

64. Jupiter requested flame resistant garment services from Cintas.

65. Jupiter received flame resistant garment services from Cintas.

66. Jupiter requested flame-resistant garments from Cintas that were unique to the needs of Jupiter.

67. Cintas purchased and provided the flame-resistant garments specifically for Jupiter's use.

68. Jupiter used the flame-resistant garments provided by Cintas.

69. Jupiter made some payments to Cintas for the flame-resistant garment services it received from Cintas.

70. The actions of the parties constitute a contract implied-in-fact.

71. On or about December 12, 2019, Cintas made demand on Jupiter for payment of the Buy-Back Amount and Past Due Invoice Amount.

72. The Buy-Back Amount that Cintas demanded from Jupiter was for the value of the unique flame-resistant garments Cintas provided to Jupiter.

73. The Past Due Invoice Amount Cintas demanded from Jupiter was for flame resistant garment services Cintas provided to Jupiter.

74. Jupiter has not paid the amounts demanded by Cintas.

75. Jupiter has been unjustly enriched by its failure to pay Cintas the amounts demanded.

### Count III
### Quantum Meruit (Contract Implied-in-Law)

76. Cintas re-states paragraphs 1 through 75 above as if set forth in full herein.

77. Jupiter requested flame resistant garment services from Cintas.

78. Jupiter received flame resistant garment services from Cintas.

79. Jupiter requested flame-resistant garments from Cintas that were unique to the needs of Jupiter.

80. Cintas purchased and provided the flame-resistant garments specifically for Jupiter's use.

81. Jupiter used the flame-resistant garments provided by Cintas.

82. Jupiter made some payments to Cintas for the flame-resistant garment services it received from Cintas.

83. The actions of the parties constitute a contract implied-in-law.

84. On or about December 12, 2019, Cintas made demand on Jupiter for payment of the Buy-Back Amount and Past Due Invoice Amount.

85. The Buy-Back Amount that Cintas demanded from Jupiter was for the value of the unique flame-resistant garments Cintas provided to Jupiter.

86. The Past Due Invoice Amount Cintas demanded from Jupiter was for flame resistant garment services Cintas provided to Jupiter.

87. Jupiter has not paid the amounts demanded by Cintas.

88. Jupiter has been unjustly enriched by its failure to pay Cintas the amounts demanded.

## Count IV
## Demand for Arbitration

89. Cintas re-states paragraphs 1 through 88 above as if set forth in full herein.

90. Paragraph ten of the Agreement contains an arbitration clause.

91. As an alternative remedy, Cintas requests an order of the Court ordering Jupiter to arbitrate the parties' dispute.

92. Alternatively, Cintas requests a Court order finding that Jupiter has waived the arbitration clause and that Cintas may proceed against Jupiter in this proceeding.

**WHEREFORE,** the plaintiff Cintas Corporation, prays that it be awarded judgment in its favor, and against the defendant, Jupiter Aluminum Corporation, for the following relief:

(a) an amount sufficient to compensate it for its damages and losses from defendant's breach of contract;

(b) compensation for the benefits improperly conferred on defendant as a result of its wrongful conduct, lest the defendant be unjustly enriched;

(c) pre-judgment interest;

(d) its costs and expenses laid out and expended herein, including its attorney's fees and costs of collection; and

(e) all other relief appropriate in the premises.

                Respectfully submitted,

                **EICHHORN & EICHHORN, LLP**

                By: /s/ David J. Beach
                     David J. Beach
                     Ryan A. Cook
                     Attorneys for plaintiff,
                     Cintas Corporation

David J. Beach, #18531-45
Ryan A. Cook, #26798-49
**EICHHORN & EICHHORN, LLP**
ATTORNEYS AT LAW
2929 Carlson Drive, Suite 100
Hammond, Indiana 46323
Tel. (219) 931-0560
dbeach@eichhorn-law.com
rcook@eichhorn-law.com

10

## Jury Demand

Plaintiff, Cintas Corporation, hereby demands trial by jury of all claims triable of right to a jury.

/s/ David J. Beach
David J. Beach

USDC IN/ND case 2:20-cv-00160-PPS document 5 filed 03/19/20 page 12 of 14

45C01-2003-CT-000307
Lake Circuit Court

Filed: 3/19/2020 3:28 PM
Clerk
Lake County, Indiana

**CINTAS**

## FLAME RESISTANT GARMENT SERVICE AGREEMENT

Agreement No. _____
Customer No. __3847__
Date __2/4/08__

Customer __JUPITER ALUMINUM__   Phone __219-937-9386__
Address __1745 165TH ST.__   City __HAMMOND__   State __IN__   Zip __46320__

### UNIFORM PRICING:

| Item | Color | Inventory | Changes | Weekly Price |
|---|---|---|---|---|
| 1189 FLAME RESISTANT JT/VINEX 11OZ | NAVY | 11 | 5 | 11.00 |
| 1188 FLAME RESISTANT PANT/VINEX 8OZ | NAVY | 11 | 5 | 10.13 |
| 1189 F/R JT STOCK | NAVY |  | 6 | 5.79 |
| 1188 F/R PT STOCK | NAVY |  | 6 | 5.22 |
|  |  |  |  |  |
|  |  |  |  |  |

The additional charges listed below are subject to adjustment by Company effective upon notice to Customer, which notice may be in the form of an invoice.

- Name Emblem         $ _____ ea   • Company Emblem   $ _____ ea
- Custom Emblem       $ _____ ea   • Embroidery           $ _____ ea
- COD Terms           $ _____ per week charge for prior service (if Amount Due is Carried to Following Week)
- Weekly Minimum Charge   $ __75.76__ per week
- Make-Up Charge          $ __1.80__ per garment.
- Seasonal Sleeve Change  $ _____ per change per week.
- EPA Regulations prohibit (40 CFR 261,262) the transport of textiles bearing free liquid. Shop towels may not be used to clean up oil or solvent spills. Shop Towel container    $ _____ /per week.
- Artwork Charge for LogoMat  $ _____
- Special Cut Garment Charge  $ + 20% __4XL + 46W +__
- Uniform Storage   Lockers: $ __1.00__ ea/week,  Laundry Lock-up: $ __2.00__ ea/week   Shipping: $ _____
- Service Charge    $ __3.95__ per week.
  This Service Charge is used to help Company pay various fluctuating current and future costs including, but not limited to, costs directly or indirectly related to the environment, energy issues, service and delivery of goods and services, in addition to other miscellaneous costs incurred or that may be incurred in the future by Company.
- Size Change: Customer agrees to have employees measured by a Cintas representative using garment "size samples". A charge of $ _____ per garment will be assessed for employees size changed within 4 weeks of installation.
  Other __Acct. Under cont. lock for 36 months (no price increases)__
- Credit Terms - Charge Payments Due 10 Days After End of Month

### FACILITY SERVICES PRODUCTS PRICING:

| Description | Del. Freq. | Inventory | Unit Price | Repl. Value |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

Customer X __Jupiter Aluminum Corporation__

Cintas Loc. No. __319__   Please Sign Name X _____
By __BISTIC, COREY__   Please Print Name X __Loren D. John__
Title __SERVICE MANAGER__   Please Print Title X __Chief Financial Officer__

Form Distribution: (1) White-Customer   (2) Canary-Office   (3) Pink-Corporate Office

R-21008 (10/02)            Page 1 of 2                    Exhibit 1



# FLAME RESISTANT GARMENT SERVICE AGREEMENT

The customer, its successors and assigns ("Customer") orders from CINTAS CORPORATION or any of its subsidiaries, successors and assigns ("Company") all of the Customer's requirements of garment rental services and other items covered by this agreement during the term of this agreement, all in accordance with the pricing, terms and conditions contained herein.

All garments will be cleaned and maintained by Company. Any garments that require replacement due to normal wear will be replaced by Company at no charge to Customer.

Customer bears full responsibility for selecting the fabrics under this agreement. Customer acknowledges that Company has made no representation, warranty, or covenant with respect to the flame-resistant qualities of the fabrics or garments or with respect to the fitness or suitability of the fabrics or garments for this purpose. Customer acknowledges that numerous manufacturers market fabrics represented to be flame-resistant. Company makes no independent representation as to the flame-resistant qualities of the fabric selected by Customer as compared to other available fabrics or fabrics which may become available in the future. Customer agrees to notify all employees of Customer who will be wearing the flame-resistant garments that the garments are not designed for long term high heat exposure or for use around open flames and that no representation is made as to the garment's ability to protect users from injury or death.

Customer agrees to notify Company, in writing, of any hazardous materials that may be picked up by Company in the soiled garments or other textiles serviced under this agreement. In no case will hazardous materials be present to the extent that they may be harmful to Company's employees.

Additional Customer employees, products and services may be added to this agreement and shall automatically become part of and subject to the terms herein. The weekly rental charge for any individual leaving the employ of Customer can be terminated, but only after all garments issued to that individual, or the value of same, have been returned to Company. All garments and other rented items remain the property of Company. If rental items are lost or destroyed by any means, Customer will pay the then current replacement values for said items.

This agreement is effective as of the date of execution above and shall remain in effect for 60 months from the date of installation. This agreement shall automatically renew for the same period of time unless Company is notified, to the contrary, in writing 180 days in advance of the expiration of the then current term. Upon each anniversary date of this agreement, Company will automatically increase the prices then in effect by the amount of the increase in the Consumer Price Index for the previous twelve months or 5%.

Customer hereby agrees to defend, indemnify and hold harmless Company from any claims and damages arising out of or associated with this agreement, including any failure of the garments to function as flame-resistant. Further, Customer releases Company from any and all liability that results or may result from the failure of the garments to function as flame-resistant.

**Company guarantees to deliver the highest quality textile rental service at all times. Any complaints about the quality of the service which have not been resolved in the normal course of business must be sent by registered letter to Company's General Manager. If Company then fails to resolve any material complaint in a reasonable period of time, Customer may terminate this agreement provided all rental items are paid for at the then current replacement values.**

Customer has ordered from Company a garment rental service requiring flame-resistant garments that are not standard to Company's normal rental product line. If Customer deletes any non-standard product, alters the design of the non-standard product, fails to renew this agreement, or this agreement is terminated for documented quality of service reasons which are not cured as set for the above, Customer agrees to buy back all non-standard products allocated to Customer at the then current replacement values. If Customer cancels this agreement prior to the applicable expiration date for any other reason, or Company terminates this agreement for cause, Customer will pay to Company, as liquidated damages and not as a penalty, the greater of the average weekly invoice total multiplied by the number of weeks remaining in the unexpired term or buy back all garments allocated to customer at the then current replacement values. Customer shall also be responsible for any unpaid charges on Customer's account prior to termination.

Any dispute or matter arising in connection with or relating to this agreement shall be resolved by binding and final arbitration under applicable state or federal laws providing for the enforcement of agreements to arbitrate disputes. Any such dispute shall be determined on an individual basis, shall be considered unique as to its facts, and shall not be consolidated in any arbitration or other proceeding with any claim or controversy of any other party.

In consideration of the sizeable investment Company is making in flame-resistant garments, Customer guarantees Company minimum weekly revenue equal to 85% of the initial invoice; provided, however, the minimum weekly revenue amount will increase by an amount equal to 85% of any increases in the weekly invoice.

Customer certifies that Company is in no way infringing upon any existing contract between Customer and any other service provider.

Exhibit 1

R-2100B (10/02)



William J. Kenealy

Jupiter Aluminum

Dear Mr. Kenealy,

Jupiter Aluminum has a significant past due balance which needs to be addressed. Invoices due on September 10, October 10, November 10 and December 10 have not been paid for a total balance due of $98,010.90. Please see that this balance is paid promptly.

We also still need to address and resolve Jupiter Aluminum's termination of the service agreement. As set forth in my email of November 4, the buy-back of the non-standard products allocated to Jupiter Aluminum is $636,140.13. I have attached an invoice in that amount.

If Cintas does not have payment of the outstanding invoices and an agreement regarding Jupiter Aluminum's buy back of non-standard products by December 16, Cintas is requesting arbitration under paragraph ten of the service agreement. Please provide payment or Jupiter Aluminum's agreement to arbitrate by December 16, 2019

Sincerely,

Jason Rieger
General Manager