**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | | |
|---|---|---|
| CINTAS CORPORATION, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | Case No: 2:20-cv-160 |
| | ) | |
| v. | ) | |
| | ) | |
| JUPITER ALUMINUM CORPORATION, | ) | |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |

**DEFENDANT/COUNTER-PLAINTIFF JUPITER ALUMINUM CORPORATION'S COUNTERCLAIM FOR DECLARATORY JUDGMENT AND OTHER RELIEF**

Defendant/Counter-Plaintiff Jupiter Aluminum Corporation files this Counterclaim for Declaratory Judgment and Other Relief against Plaintiff/Counter-Defendant Cintas Corporation.

**NATURE OF THE CASE**

1. Jupiter Aluminum Corporation ("Jupiter") operates aluminum mills in Hammond, Indiana; Fairland, Indiana; and Beech Bottom, West Virginia. Over the years, Jupiter has rented uniforms and other services from Cintas Corporation ("Cintas") for use by its employees in its mills. At times, Jupiter has rented uniforms and other services from Cintas pursuant to a service agreement, while at other times, no service agreement has been in effect and Jupiter has paid Cintas for service pursuant to the terms of regular invoices.

2. In late 2019, after conducting an audit of Cintas' invoices issued to Jupiter's Hammond plant for uniform rental services, Jupiter discovered that Cintas had engaged in a years-long scheme to overcharge Jupiter for uniform rental and cleaning services. This scheme included charging Jupiter for more uniforms than Cintas actually delivered to Jupiter and charging Jupiter more to clean and service each uniform than the parties had agreed upon.

1

3. When Jupiter discovered Cintas' overcharging scheme, Jupiter terminated its Flame Resistant Garment Service Agreement for Hammond, rejected Cintas' invoices issued between August 2019 and November 2019 (which had not been paid pending the audit), demanded paperwork to justify Cintas' charges since the Hammond relationship began in 2008, and demanded a refund from Cintas of several hundred thousand dollars (to be fully determined) upon receipt of Cintas' complete paperwork. Jupiter also terminated its Standard Rental Service Agreement for Beech Bottom, with cause. Cintas ignored Jupiter's demands for paperwork and a refund, and instead filed a lawsuit, claiming that Jupiter owes it money.

4. Cintas' issuance of fraudulent invoices, at least dating from 2014 through 2019, but likely dating farther back, upon which Jupiter just discovered and reasonably relied to its detriment by paying for goods and services which were not delivered, has caused damage to Jupiter in excess of $500,000. Cintas' conduct has further breached its agreement to provide Jupiter with the agreed upon services at the agreed upon price, damaging Jupiter. Finally, Jupiter brings this action requesting a declaration that its service agreements with Cintas at its Hammond and Beech Bottom plants are terminated and that Jupiter has no further obligations thereunder.

**PARTIES**

5. Jupiter Aluminum Corporation is an Illinois corporation with its principal place of business located in Des Plaines, Illinois. Jupiter is a citizen of Illinois.

6. Cintas Corporation is a Nevada corporation with its principal place of business located in Cincinnati, Ohio. Cintas is a citizen of Nevada and Ohio.

**JURISDICTION AND VENUE**

7. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the parties are citizens of different states.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District and Division.

**FACTUAL BACKGROUND**

9. Jupiter Aluminum Corporation is an aluminum mill operator that recycles aluminum scrap and rolls the aluminum into coils to be used in building, construction, agricultural, automotive and distribution industries. These coils are either directly sold as mill finish or painted at Jupiter's paint lines before shipping to customers.

10. Jupiter operates an aluminum recycling facility in Hammond, Indiana (the "Hammond Plant").

11. Jupiter operates a paint line in Fairland, Indiana.

12. Jupiter operates a paint line in Beech Bottom, West Virginia (the "Beech Bottom Plant").

**The Hammond Agreement**

13. On or about February 4, 2008, Jupiter entered into a Flame Resistant Garment Service Agreement with Cintas Corporation for the provision of uniforms and related services at the Hammond Plant (the "Hammond Agreement"). The Hammond Agreement is attached as Exhibit 1.

14. The Hammond Agreement is a form contract created by Cintas with blank spaces to complete the specific details of each specific customer agreement.

15. The Hammond Agreement does not contain any statement that it was negotiated or drafted by all parties or their representatives.

16. The Hammond Agreement does not contain any statement that the parties were represented by legal counsel in negotiations.

17. While Cintas states in the Hammond Agreement that flame resistant garments are "not standard to the Company's normal rental product line," Cintas nonetheless has and/or had a standard form contract for such garment services.

18. Cintas represented to Jupiter that it is the largest provider of flame resistant uniforms in the industry.

19. Cintas represents to the public that it "is the largest provider of managed flame resistance clothing (FRC) programs."

20. Cintas represents to the public that it operates nearly 500 facilities in North America and "leads the industry in supplying corporate identity uniform programs . . . first aid, safety, [and] fire protection products and services…"

21. Pursuant to the Hammond Agreement, Cintas agreed to rent eleven (11) Vinex flame resistant pants and jackets for Jupiter's employees to use at the Hammond Plant, such that each employee would have 11 sets of suits.

22. In addition to the eleven (11) Vinex flame resistant suits, pursuant to the Hammond Agreement, Cintas agreed to rent five (5) changes of Vinex suits and six (6) changes of "stock" suits.

23. Pursuant to the Hammond Agreement, Cintas agreed to launder and service the flame resistant pants and jackets, store extras while not in use, and replace any garments due to normal wear and tear.

24. Pursuant to the Hammond Agreement, Jupiter did not request that the flame resistant suits be affixed or embroidered with the company's emblem.

25. Pursuant to the Hammond Agreement, when employees left the employ of Jupiter, their rental garments would be returned to Cintas and the weekly rental charge for that individual would be terminated.

26. Pursuant to the Hammond Agreement, when Jupiter hired new employees, Cintas would provide them a new set of rental garments.

27. Pursuant to the Hammond Agreement, "All garments and other rented items remain the property of [Cintas]."

28. Pursuant to the Hammond Agreement, "Upon each anniversary date of this agreement, [Cintas] will automatically increase the prices then in effect by the amount of the increase in the Consumer Price Index for the previous twelve months or 5%."

29. The Hammond Agreement provides that is can be terminated by Jupiter in writing more than 180 days in advance of the then current 60 month term.

30. The Hammond Agreement states: "If Customer cancels this agreement prior to the applicable expiration date for any other reason…Customer will pay to [Cintas], as liquidated damages and not as a penalty, the greater of the average weekly invoice total multiplied by the number of weeks remaining in the unexpired term or buy back all garments allocated to customer at the then current replacement values." (the "Hammond Termination Fee").

31. The Hammond Termination Fee is an unenforceable penalty.

5

**The Beech Bottom Agreement**

32. On or about September 26, 2013, Jupiter entered into a Standard Rental Service Agreement with Cintas Corporation for the provision of uniforms and related services at the Beech Bottom Plant (the "Beech Bottom Agreement"). The Beech Bottom Agreement is attached as Exhibit 2.

33. The Beech Bottom Agreement is a form contract created by Cintas with blank spaces to complete the specific details of each specific customer agreement.

34. The Beech Bottom Agreement does not contain any statement that it was negotiated or drafted by all parties or their representatives.

35. The Beech Bottom Agreement does not contain any statement that the parties were represented by legal counsel in negotiations.

36. Pursuant to the Beech Bottom Agreement, Cintas agreed to rent standard uniforms for Jupiter's employees to use at the Beech Bottom Plant.

37. Pursuant to the Beech Bottom Agreement, Cintas agreed to launder and service the standard pants and shirts, store extras while not in use, and replace any garments due to normal wear and tear.

38. Pursuant to the Beech Bottom Agreement, when employees left the employ of Jupiter, their rental garments would be returned to Cintas and the weekly rental charge for that individual would be terminated.

39. Pursuant to the Beech Bottom Agreement, when Jupiter hired new employees, Cintas would provide them a new set of rental garments.

40. Pursuant to the Beech Bottom Agreement, "All garments and other rented items … remain the property of [Cintas]."

41. The Beech Bottom Agreement does not state that the uniforms Jupiter agreed to rent from Cintas were non-standard, unique or otherwise specific for Jupiter's use.

42. The Beech Bottom Agreement states that the initial term is sixty (60) months, and the agreement automatically renews for the same period unless Cintas is notified in writing, 60 days in advance of the expiration of the then current term.

43. The Beech Bottom Agreement states that if it is terminated by the customer prior to the applicable expiration date for any reason other than documented quality of service reasons, "Customer will pay to [Cintas], as liquidated damages and not as a penalty, the greater of 50% of the average weekly invoice total multiplied by the number of weeks remaining in the unexpired term, or buy back all garments and other products allocated to Customer at the then current replacement values." (the "Beech Bottom Termination Fee").

44. The Beech Bottom Termination Fee is an unenforceable penalty.

## Cintas' Fraudulent Scheme

45. The Hammond Agreement, executed on February 4, 2008, renewed by its own terms for an additional sixty (60) months on February 4, 2013. By those terms, the Hammond Agreement renewed again on February 4, 2018, for a term ending on February 4, 2023.

46. Pursuant to the Hammond Agreement, when Jupiter hired and terminated employees, Jupiter informed Cintas so that new uniforms could be rented for new employees and uniforms of terminated employees could be returned.

47. Jupiter regularly returned the rented uniforms of terminated employees.

48. Jupiter relied upon Cintas to regularly update its inventory system to reflect the new employees that had been hired and the old employees who had been terminated.

49. Jupiter relied upon Cintas to regularly update its inventory system to ensure that Cintas only charged Jupiter for the actual number of uniform sets that Jupiter was renting at that time.

50. Pursuant to the Hammond Agreement, Cintas agreed to launder and store extra uniform sets, such that Jupiter paid for uniform sets located at both the Hammond Plant for its employees to use and extras in laundry, storage and/or repair at Cintas' facility.

51. Over the years, if a rented uniform needed to be replaced, the Hammond Agreement required Cintas to replace the old uniform with a new uniform, and add that new uniform to the complete set of uniforms for each Jupiter employee, while removing the old uniform from the inventory system and weekly charges.

52. Over the years, Cintas failed to regularly update its inventory system and continued to charge Jupiter for weekly fees to rent uniforms for terminated employees.

53. Over the years, Cintas categorized uniforms as "lost," charging Jupiter for a replacement uniform, when the uniform was not lost.

54. Over the years, Cintas failed to ensure that the number of uniform sets per employee it maintained for Jupiter conformed to the terms of the Hammond Agreement.

55. Over the years, Cintas charged Jupiter for more uniform sets per employee than Jupiter had agreed to rent pursuant to the Hammond Agreement.

56. Over the years, Cintas committed gross negligence in its provision of flame resistant uniforms to Jupiter, including but not limited to, placing non-flame resistant uniforms in Jupiter's employees' lockers, returning burned and hole-ridden uniforms to employees' lockers, poor integrity of uniforms, and lack of proper inspection, repair and replacement of uniforms.

57. Over the years, Cintas failed to ensure Jupiter's employees has a sufficient number of clean and usable uniforms on site to use.

58. Pursuant to the Hammond Agreement, over the years, from 2008 through 2019, Cintas was responsible for annually increasing rental service prices and applying agreed upon increased rental service prices to weekly invoices issued to Jupiter.

59. Pursuant to the Hammond Agreement, rental prices would increase each anniversary date "by the amount of the increase in the Consumer Price Index for the previous twelve months or 5%."

60. Jupiter relied upon Cintas to properly calculate the amount of the annual price increase pursuant to the terms of the Hammond Agreement.

61. Jupiter relied upon Cintas to issue true and correct invoices on a weekly basis for goods provided and services rendered.

62. In or around October 2019, Jupiter discovered irregularities in the weekly invoices it received from Cintas.

63. In or around October 2019, Jupiter discovered that Cintas had been overcharging Jupiter for rental services far in excess of the prices agreed upon in the Hammond Agreement, and began an audit of its current and past invoices.

64. After discovering Cintas' overcharging scheme, on or about October 21, 2019, Jupiter terminated the Hammond Agreement for cause.

65. On or about October 22, 2019, Cintas demanded that Jupiter "buy back" all non-standard apparel from Cintas for $672,974.30. Cintas demanded that same "buy back" price, also known as the "current replacement value" or "new price" for each jacket and each pant, regardless of its age or wear.

66. Jupiter objected to Cintas' demand, and requested that Cintas provide an itemized listing of all uniforms Cintas wanted Jupiter to "buy back" and the purchase date of each item.

67. Jupiter is aware that the "purchase date" of each garment, or at least the "activation date" when the employee began wearing a uniform set, is readily available to Cintas because Cintas had previously provided such information on certain occasions to Jupiter by referencing the ID number on each garment.

68. Pursuant to the Hammond Agreement, the garments Cintas' demanded that Jupiter "buy back" are the property of and owned by Cintas.

69. By October 2019, Jupiter had rented uniforms from Cintas for over 11 years, such that it was conceivable that some uniforms which Jupiter had been renting and which Cintas owned were more than 11 years old.

70. Despite Jupiter's multiple requests for information in late October and early November 2019, Cintas refused to provide a purchase date for each pant and jacket which Cintas owned and which Jupiter had rented, for which Cintas now wanted Jupiter to pay to buy a new jacket and pant, even though such information could be easily determined by Cintas.

71. At that time, Cintas also refused to provide an inventory of uniforms to support its demand for $672,974.30 to "buy back" the uniforms.

72. In an email to Jupiter dated November 4, 2019, Cintas' Hammond General Manager Jason Rieger again refused to provide purchase dates or an inventory, but the "buy back" demand now increased to $676,365.87.

73. On or about December 12, 2019, without explanation, Cintas revised its "buy back" price down to $636,140.13. Cintas still refused to provide a purchase date for each pant and jacket it demanded that Jupiter "buy back."

74. During this time, Jupiter's audit of invoices discovered that Cintas had repeatedly and egregiously engaged in a scheme to charge Jupiter for rental services far in excess of the price increases agreed upon in the Hammond Agreement.

75. Jupiter discovered that Cintas had issued it false invoices dating to at least 2014 and likely well before that date.

76. Jupiter discovered that Cintas had concealed the amount of its price increases by failing to clearly and expressly identify the price increase calculation when imposed.

77. Pursuant to the price increases authorized by the Hammond Agreement, the Vinex Fire Resistant Jacket that Jupiter first rented for $1.00 per week in 2008, increasing annually according to the increases in the Consumer Price Index, would have cost $1.17 per week in 2019. Even if increased at five percent annually, that jacket would have cost $1.55 per week in 2019.

78. Based on Cintas' scheme to repeatedly overcharge Jupiter over several years in violation of the Hammond Agreement, in 2019, Cintas charged Jupiter $1.979 per week to rent that jacket.

79. By 2019, due to its scheme over several years, Cintas charged Jupiter nearly seventy percent more, per jacket, per week, than authorized by the Hammond Agreement.

80. When Jupiter discovered Cintas' scheme, Jupiter requested copies of Cintas' invoices to justify the amounts charged to Jupiter since 2008. [Email correspondence between Jupiter and Cintas is attached hereto as Exhibit 3.]

81. Cintas was unable and/or unwilling to provide the requested invoices.

82. Cintas was unable and/or unwilling to provide any paperwork to justify the amounts charged to Jupiter dating to 2008.

83. On January 31, 2020, Jupiter rejected ten (10) invoices issued by Cintas between August 2019 and November 2019 because the amounts claimed to be due were incorrect. [Ex. 3.]

84. The ten (10) invoices rejected by Jupiter were issued: (1) August 21, 2019; (2) August 28, 2019; (3) September 5, 2019; (4) September 11, 2019; (5) October 2, 2019; (6) October 9, 2019; (7) October 16, 2019; (8) October 23, 2019; (9) October 30, 2019; and (10) November 6, 2019.

85. On January 31, 2020, Jupiter informed Cintas that Jupiter had discovered that Cintas had repeatedly and improperly overcharged Jupiter for uniform rentals and cleanings for years, far in excess of the fees authorized by the Hammond Agreement. [Ex. 3.]

86. On January 31, 2020, Jupiter informed Cintas that due to Cintas' improper overcharges for several years, Jupiter does not owe Cintas any further amounts for goods and services, but rather is actually owed a refund of several hundred thousand dollars.

87. Based on initial calculations of Cintas' scheme to overcharge Jupiter dating to at least 2014, Jupiter is owed more than $500,000 in refunds of overpayments.

88. Jupiter also discovered billing discrepancies related to the Beech Bottom Agreement.

89. Due to this fraudulent scheme, Jupiter determined it could no longer work with Cintas and terminated the Hammond Agreement and Beech Bottom Agreement, for cause.

90. Jupiter terminated the Hammond Agreement on October 21, 2019, for cause, shortly after discovering Cintas' fraudulent scheme and while continuing to investigate.

91. Jupiter terminated that Beech Bottom Agreement on April 23, 2020, for cause, due to Cintas' fraudulent scheme.

92. Rather than investigate Jupiter's termination for cause, Cintas decided to file a lawsuit, claiming that pursuant to the Hammond Agreement, Jupiter owes it $98,010.90 for the rejected "past due" invoices and the Hammond Termination Fee, totaling $636,140.13 to buy back the used flame resistant uniforms which Cintas owns.

93. Rather than investigate Jupiter's termination for cause, Cintas sent a demand letter, claiming that pursuant to the Beech Bottom Agreement, Jupiter owes it the Beech Bottom Termination Fee, totaling $84,697.93.

## COUNT I
## DECLARATORY JUDGMENT
### (Hammond Agreement)

94. For Paragraph 94, Jupiter reasserts and realleges Paragraphs 1 through 93 as if fully stated herein.

95. An actual controversy exists with respect to Jupiter's and Cintas' rights and obligations subsequent to the termination of the Hammond Agreement.

96. Jupiter terminated the Hammond Agreement for cause on or about October 21, 2019, after discovering Cintas' long-running scheme to overcharge Jupiter for uniform rental services.

97. In the alternative, Jupiter terminated the Hammond Agreement on or about July 8, 2013 for cause, due to documented quality of service reasons which were not cured, and did not reaffirm the Hammond Agreement. Cintas offered a new binding service agreement in 2015 because, per its admission, the Hammond Agreement had "expired" but no new agreement was made.

98. Based upon Jupiter's termination of the Hammond Agreement for cause, Jupiter is not required to pay the Hammond Termination Fee to "buy back" any non-standard products it rented from Cintas at "then current replacement values."

99. The Hammond Termination Fee, encompassing form language in the Hammond Agreement pursuant to which Cintas purportedly demanded that Jupiter "buy back" used, standard rental uniforms owned by Cintas, operates as an unenforceable penalty.

100. Based upon Jupiter's termination of the Hammond Agreement for cause, Jupiter has no further obligations pursuant to the Hammond Agreement.

WHEREFORE, Defendant/Counter-Plaintiff Jupiter Aluminum Corporation respectfully requests that this Court enter a declaratory judgment holding that the Hammond Termination Fee in the Hammond Agreement is unenforceable and that Jupiter has no further obligations pursuant to the Hammond Agreement, and for such other and further relief as this Court deems just and proper.

**COUNT II**
**DECLARATORY JUDGMENT**
**(Beech Bottom Agreement)**

101. For Paragraph 101, Jupiter reasserts and realleges Paragraphs 1 through 93 as if fully stated herein.

102. An actual controversy exists with respect to Jupiter's and Cintas' rights and obligations subsequent to the termination of the Beech Bottom Agreement.

103. Jupiter terminated the Beech Bottom Agreement for cause after discovering Cintas' long-running scheme to overcharge Jupiter for uniform rental services.

104. Based upon Jupiter's termination of the Beech Bottom Agreement for cause, Jupiter is not required to pay the Beech Bottom Termination Fee.

105. The Beech Bottom Termination Fee, encompassing form language in the Beech Bottom Agreement pursuant to which Cintas purportedly demanded payment upon termination, operates as an unenforceable penalty.

106. Based upon Jupiter's termination of the Beech Bottom Agreement for cause, Jupiter has no further obligations pursuant to the Beech Bottom Agreement.

WHEREFORE, Defendant/Counter-Plaintiff Jupiter Aluminum Corporation respectfully requests that this Court enter a declaratory judgment holding that the Beech Bottom Termination Fee in the Beech Bottom Agreement is unenforceable and that Jupiter has no further obligations pursuant to the Beech Bottom Agreement, and for such other and further relief as this Court deems just and proper.

## COUNT III
## BREACH OF CONTRACT
### (Hammond Agreement)

107. For Paragraph 107, Jupiter reasserts and realleges Paragraphs 1 through 93 as if fully stated herein.

108. The Hammond Agreement was a valid and enforceable contract, from its execution on February 4, 2008 through its termination on or about October 21, 2019.

109. For adequate consideration, including payment of invoices, Cintas agreed to abide by the terms of the Hammond Agreement, including to issue accurate invoices correctly reflecting the agreed upon rental and service charges, including with correct annual increases.

110. For adequate consideration, including payment of invoices, Cintas agreed to abide by the terms of the Hammond Agreement, including to issue accurate invoices correctly reflecting the agreed upon number of uniforms that Jupiter agreed to rent per employee.

111. For adequate consideration, including payment of invoices, Cintas agreed to abide by the terms of the Hammond Agreement, including to issue accurate invoices correctly reflecting only the current employees of Jupiter for whom rental uniforms were currently being provided.

112. Jupiter fully performed its obligations under the Hammond Agreement.

113. Cintas breached the Hammond Agreement by committing gross negligence in its provision of flame resistant uniforms to Jupiter.

114. Cintas breached the Hammond Agreement by issuing inaccurate invoices to Jupiter.

115. Cintas breached the Hammond Agreement by charging more for uniform rental services than agreed upon in the Hammond Agreement.

116. Cintas breached the Hammond Agreement by increasing the price of uniform rental services on each anniversary by an amount greater than permitted by the Hammond Agreement.

117. Cintas breached the Hammond Agreement by failing to openly and conspicuously identify the amount of the annual uniform rental service price increase on the invoices issued to Jupiter.

118. Cintas breached the Hammond Agreement by charging Jupiter for more uniforms per person than Jupiter agreed to rent from Cintas.

119. Cintas breached the Hammond Agreement by charging Jupiter for uniforms categorized as "lost" which were not actually lost.

120. Cintas breached the Hammond Agreement by charging Jupiter to rent uniforms for terminated employees.

121. As a direct and proximate result of Cintas' breach of the Hammond Agreement, Jupiter has overpaid Cintas for uniform rental services in an amount exceeding $500,000.

WHEREFORE, Defendant/Counter-Plaintiff Jupiter Aluminum Corporation respectfully requests that this Court enter a judgment against Plaintiff/Counter-Defendant Cintas Corporation in an amount to be proven at trial, plus pre-judgment interest through the date of judgment, and for such other and further relief as this Court deems just and proper.

## COUNT IV
## FRAUD

122. For Paragraph 122, Jupiter reasserts and realleges Paragraphs 1 through 93 as if fully stated herein.

123. From at least 2014 through November 2019, Cintas engaged in an intentional and deliberate scheme to make false statements of material fact to Jupiter on a regular basis through the issuance of false invoices to Jupiter.

124. Cintas knew that its invoices contained false statements of material fact.

125. Cintas intended that Jupiter rely on the false statements of material fact contained in the invoices.

126. Jupiter reasonably relied on Cintas' false statements of material fact contained in the invoices.

127. Cintas' false statements of material fact proximately caused Jupiter to overpay Cintas for uniform rental services in an amount exceeding $500,000.

WHEREFORE, Defendant/Counter-Plaintiff Jupiter Aluminum Corporation respectfully requests that this Court enter a judgment against Plaintiff/Counter-Defendant Cintas Corporation in an amount to be proven at trial, plus punitive damages, pre-judgment interest through the date of judgment, attorneys' fees and costs of suit, and for such other and further relief as this Court deems just and proper.

        Respectfully submitted,

        **JUPITER ALUMINUM CORPORATION,**

        By: __/s/ Blake A. Roter_____
            One of its Attorneys

Blake A. Roter
Burke, Warren, MacKay & Serritella, P.C.
330 N. Wabash Ave, 21st Floor
Chicago, Illinois 60611
312-840-7000
312-840-7900 (facsimile)
*Attorneys for Defendant/Counter-Plaintiff*

## **NOTICE OF FILING AND CERTIFICATE OF SERVICE**

The undersigned, an attorney, states that he caused a copy of the foregoing to be filed electronically with the Northern District of Indiana, and served by Court's CM/ECF system, upon:

David J. Beach
Ryan A. Cook
Eichhorn & Eichhorn, LLP
2929 Carlson Drive, Suite 100
Hammond, Indiana 46323
dbeach@eichhorn-law.com
rcook@eichhorn-law.com

						_____/s/ Blake A. Roter_____