UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| CINTAS CORPORATION, | ) |
| | ) |
| Plaintiff and Counter-Defendant, | ) |
| | ) |
| vs. | ) 2:20CV160-PPS/JPK |
| | ) |
| JUPITER ALUMINUM CORPORATION, | ) |
| | ) |
| Defendant and Counterclaimant. | ) |

**OPINION AND ORDER**

Between 2008 and 2019, Cintas Corporation provided rental uniforms to Jupiter Aluminum Corporation, both for Jupiter's Hammond facility and other locations. The relationship has ended badly with each side hurling accusations back and forth resulting in a complaint by Cintas, a counterclaim by Jupiter, and a counterclaim-to-the-counterclaim by Cintas. Jupiter now seeks the dismissal of some of Cintas's claims.

Cintas's complaint contains four counts, all pertaining to its provision of goods and services to Jupiter's Hammond plant. Count I is a claim for breach of contract. Counts II and III are quantum meruit claims, one alleging a contract implied-in-fact and the other a contract implied-in-law. Count IV presents a demand to submit the parties' dispute to arbitration. Jupiter seeks the dismissal of Counts II, III and IV, which would pare Cintas's pleading down to a breach of contract claim.

**Can Quantum Meruit Claims Co-Exist with Breach of Contract?**

Jupiter first contends that Cintas cannot bring quantum meruit claims "where an express written contract is alleged to govern identical subject matter." [DE 12 at 4.]

Jupiter's argument is correct in certain circumstances, but not here, and at least not now on a motion to dismiss. Jupiter relies principally on my decision in *CoMentis, Inc. v. Purdue Research Foundation*, 765 F.Supp.2d 1092 (N.D.Ind. 2011). There I noted that "[a]s a general matter, a party may plead breach of an express contract, breach of an implied contract, and promissory estoppel in the alternative, even though the claims are inconsistent" but that "a claim for breach of an implied contract may not proceed in the alternative where the parties have an express contract that covers the same subject matter." *Id*. at 1098. I ultimately concluded that Co-Mentis's unjust enrichment claim had to be dismissed because "where an express contract governs the parties' behavior, a claim for unjust enrichment is not cognizable." *Id*. at 1102. But the clincher in that case was the fact that the parties were "unquestionably bound by an enforceable express contract governing the parties' relationship." *Id*.

In this case, by contrast, the pleadings demonstrate that the parties do not "unquestionably agree" to the existence of an express contract governing their relationship. Although both parties acknowledge that in February 2008 they entered into a Flame Resistant Garment Service Agreement [DE 1 at ¶9; DE 14 at ¶13], the ultimate duration of that agreement appears to be in dispute. Cintas's complaint alleges that on July 8, 2013, "Jupiter sent a letter to Cintas claiming that it was cancelling the Agreement." [DE 5 at ¶24.] Nonetheless, Cintas alleges that the parties continued thereafter to provide, receive and pay for flame resistant garment services. [*Id.* at ¶¶25-27.] Despite Jupiter's earlier cancellation letter, according to the complaint, "Jupiter

notified Cintas on October 21, 2019 that Jupiter would be receiving new garment rental service effective October 25, 2019," and "[o]n November 7, 2019, Jupiter notified Cintas that it was terminating Cintas's services effective immediately." [*Id*. at ¶30.] These allegations explain Cintas's interest in quantum meruit as a basis for relief if the parties' agreement is ultimately found not to have remained in force throughout their business relationship.

The uncertainty is also reflected in Jupiter's pleadings. In its answer, Jupiter denies that the original February 4, 2008 Service Agreement was a valid and enforceable contract. [DE 13 at ¶13, ¶¶52-54.] As its Third Affirmative Defense, Jupiter contends that "the Agreement was terminated in 2013 and/or otherwise expired before 2015." [*Id*. at 16.] In Count I of its counterclaim, Jupiter alleges that it "terminated the Hammond Agreement for cause on or about October 21, 2019," but that "[i]n the alternative, Jupiter terminated the Hammond Agreement on or about July 8, 2013." [DE 14 at ¶96, ¶97.]

In this factual setting in which the existence of a valid express contract governing the parties' relationship is disputed, and especially at this early stage of the litigation, claims in the alternative for breach of contract and quantum meruit must be permitted. Recovery for any particular damages (or period of damages) must be based on breach of contract if there existed (at that time) an enforceable contract controlling the rights of the parties. But if the parties' business interaction continued at times without a governing express contract, quantum meruit may be an appropriate remedy.

3

This conclusion is consonant with the principles of Fed.R.Civ.P. 8(d)(3), which permits a party to "state as many separate claims or defenses as it has, regardless of consistency." Applying this concept to claims like those before me, one court has said: "Although plaintiff would not be able to recover under its quasi-contract claims if there was in fact a contract governing its relationship with defendant, it is free to plead such alternative theories at this stage of the litigation." *Diamond Center, Inc. v. Leslie's Jewelry Mfg. Corp.*, 562 F.Supp.2d 1009, 1017 (W.D.Wisc. 2008) (allowing unjust enrichment and promissory estoppel claims along with a claim for breach of contract). Many other courts agree, including the Seventh Circuit: "A party is allowed to plead breach of contract, or if the court finds no contract was formed to plead for quasi-contractual relief in the alternative." *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003). *See also Santangelo v. Comcast Corporation*, 162 F.Supp.3d 691, 702 (N.D. Ill. 2016) (same); *In re Fluidmaster, Inc.*, 149 F.Supp.3d 940, 963 (N.D.Ill. 2016) (same). These cases support my conclusion that Cintas's quantum meruit claims are not subject to dismissal at this juncture.

**Waiver of Demand for Arbitration**

Count IV of the complaint is a bit perplexing. It invokes paragraph 10 of the Service Agreement which contains an arbitration clause. [DE 5 at ¶90]. Count IV first pleads that "[a]s an alternative remedy, Cintas requests an order of the Court ordering Jupiter to arbitrate the parties' dispute," but also "[a]lternatively, Cintas requests a Court order finding that Jupiter has waived the arbitration clause and that Cintas may

4

proceed against Jupiter in this proceeding." [*Id*. at ¶¶91, 92.] Cintas's approach in Count IV takes pleading in the alternative to a whole new level.

But setting the confusion of Count IV aside, it has to be dismissed because Cintas has waived any right to demand arbitration by filing its claims for relief on the merits in a judicial forum. [DE 12 at 6.] "A party may waive a contractual right to arbitrate expressly or implicitly." *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 562 (7th Cir. 2008). Whether or not a party has implicitly waived arbitration requires a determination whether the party has acted consistently with the right to arbitrate, based on consideration of all the circumstances. *Id*. Tucking an equivocal invocation of arbitration in the last of four causes of action is at best a weak assertion of Cintas's right to arbitrate. And in its opposition to Jupiter's motion, Cintas has not substantively responded to the arbitration waiver argument, other than to summarily assert in its introductory paragraph that it has not waived its right. [DE 20 at 1.]

Another indication that Cintas is abandoning any demand concerning arbitration with Jupiter is that the parties' separate agreement relating to another location (Beech Bottom, West Virginia) also contains an arbitration clause but in its counterclaim-to-the-counterclaim based on that agreement, Cintas has omitted any arbitration demand. [DE 14-2 at 2.] All these circumstances together lead me to conclude that Cintas has decided to forgo any effort to compel arbitration against Jupiter. Considering the motion to dismiss Count IV to be unopposed, I will grant it.

5

**Attorney's Fees and Costs of Collection**

Jupiter asks me to strike from Cintas's complaint the prayer for "its costs and expenses laid out and expended herein, including its attorneys fees and costs of collection."  [DE 5 at 9; DE 12 at 8.]  Jupiter invokes my authority under Fed.R.Civ.P. 12(f) to "strike from a pleading…any redundant, immaterial, impertinent, or scandalous matter" and cites cases striking a request for attorney's fees where there is no legal basis for such an award.   [DE at 12 at 8.]  Apparently assuming success as to the dismissal of the quantum meruit claims, Jupiter only addresses the unavailability of attorney's fees on Cintas's breach of contract claim.

In response, Cintas doesn't dispute that none of its claims directly supports an award of attorney's fees, but cites Indiana common law recognizing an exception to the American rule and permitting an award of attorney's fees imposed for an opponent's "obdurate behavior."  [DE 20 at 6, quoting *State Bd. of Tax Com'rs. v. Town of St. John*, 751 N.E.2d 657, 658 (Ind. 2001).]  As Cintas notes, this Indiana Supreme Court holding was codified in Indiana Code §34-52-1-1.  [DE 20 at 6.]  I have previously addressed a similar argument and dismissed a claim for attorney's fees under IC §34-52-1-1 "because that statute is not binding on this court under the *Erie* doctrine."  *Williams v. State Farm Ins. Co.*, 2011 WL 2111988, at *1 (N.D.Ind. 2011).  I remain convinced 9 years later that Indiana's frivolous litigation statute is "procedural because it allows for the award of fees based upon the conduct of the parties and the attorneys in filing and litigating the claim, rather than on a claim's underlying merits."  *Id*. at *2.  Inapplicable in federal court, IC ¶34-52-1-1 cannot provide a basis for Cintas to recover attorney's fees.

Although Jupiter included Cintas's prayer for "costs of collection" in its motion to strike, both parties have neglected discussion of the authority for such an award. In federal court the prevailing party is entitled to an award of the costs specified in 28 U.S.C. §1920. Costs associated with collection of the judgment are not within the statutory list. Because the analysis is that simple, even in the absence of adequate treatment by the parties, I will strike the prayer for costs of collection along with the prayer for attorney's fees.

**Jupiter's Challenges to Cintas's Counterclaim to Jupiter's Counterclaim**

Jupiter responded to Cintas's complaint by filing an answer and affirmative defenses [DE 13] and a separate counterclaim [DE 14]. Jupiter's counterclaim introduces a new piece to the backdrop of the litigation, namely the separate agreement between the parties applicable to Jupiter's Beech Bottom, West Virginia facility. Jupiter's counterclaim alleges that in 2019 it discovered that for years Cintas had been over-charging for uniform rental in Hammond in a number of ways, that there were billing discrepancies relating to the Beech Bottom location as well, and that Cintas owed Hammond more than $500,000 in refunds for overpayments. [DE 14 at ¶¶52-56, ¶63, ¶87-88.] The counterclaim contains four counts – Count I seeking a declaratory judgment that the Hammond agreement is unenforceable and Jupiter has no further obligations under it, Count II seeking the same declaratory judgment as to the Beech Bottom agreement, Count III alleging Cintas's breach of the Hammond agreement, and Count IV alleging fraud.

7

In response to Jupiter's counterclaim, Cintas filed a counterclaim of its own, based on the Beech Bottom agreement and mirroring Counts I, II and III of Cintas's original complaint – breach of contract, quantum meruit (contract implied-in-fact) and quantum meruit (contract implied-in-law). Jupiter has now challenged Cintas's counterclaim-to-the-counterclaim by a separate motion to strike or to partially dismiss. Jupiter first contends that Cintas's counterclaim "should be stricken, with leave to file an amended complaint, in order to effectuate a more orderly proceeding and to avoid jury confusion." [DE 24 at 1.] Jupiter does not suggest that a counterclaim-to-a-counterclaim is not permitted under the applicable rules of procedure, but that having two counterclaims is potentially confusing to a jury and that if Cintas is required instead to amend its complaint to add the Beech Bottom claims, Jupiter can file an omnibus motion to dismiss.

This last bit previews that Jupiter goes on in its motion to make the same arguments against the quantum meruit claims and the prayer for attorney's fees and collection costs as it made in its earlier motion against the original complaint. [There is no challenge about arbitration because as I previously noted Cintas's counterclaim does not invoke the Beech Bottom agreement's arbitration clause.] I see no advantage in an omnibus motion addressing an omnibus complaint, because I am ready to rule on both existing motions now. As far as potential jury confusion, I acknowledge that a counterclaim-to-a-counterclaim is an unwieldy creature, but it is not an untamable one. If all the parties' claims are ultimately presented to a jury, Cintas's claims can be

8

described as Cintas's Hammond claims and Cintas's Beech Bottom claims, without causing undue perplexity. The motion to strike Cintas's counterclaim will be denied, and the remainder of Jupiter's motion will be granted and denied analogously to my ruling on Jupiter's first motion – that is, by denying dismissal of the quantum meruit claims and by striking the prayer for attorney's fees and costs of collection, all for the reasons previously explained.

**ACCORDINGLY:**

Defendant Jupiter Aluminum Corporation's Partial Motion to Dismiss and Strike Plaintiff Cintas Corporation's Complaint [DE 11] is GRANTED IN PART in that the Demand for Arbitration in Count IV and the prayers for attorney's fees and costs of collection are DISMISSED. In all other respects, the motion is DENIED.

Defendant Jupiter Aluminum Corporation's Motion to Strike Cintas Corporation's Counterclaim [DE 24] is DENIED. Jupiter's Motion in the Alternative to Partially Dismiss Cintas Corporation's Counterclaim [DE 24] is GRANTED IN PART in that the prayers for attorney's fees and costs of collection are DISMISSED, but is otherwise DENIED.

**SO ORDERED**.

ENTERED: August 10, 2020.          /s/ Philip P. Simon
                                   UNITED STATES DISTRICT JUDGE