# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| CINTAS CORPORATION, | ) |
| Plaintiff, | ) Case No: 2:20-cv-160 |
| v. | ) |
| JUPITER ALUMINUM CORPORATION, | ) |
| Defendant. | ) |

## AGREED ESI PROTOCOL

Pursuant to the Report of the Parties' Planning Meeting [Doc. 18] and the Court's May 27, 2020 Order [Doc. 21], Cintas Corporation ("Cintas") and Jupiter Aluminum Corporation ("Jupiter") have conferred regarding the procedures for handling electronic discovery in this matter, and have further agreed to the terms in this Protocol.

**I.     PRESERVATION**

Preservation of potentially relevant ESI shall be reasonable and proportionate. The producing party shall take reasonable steps to collect and process documents using methods that avoid spoliation of data.

**II.    IDENTIFICATION AND COLLECTION OF DOCUMENTS**

1.     Except at otherwise agreed upon in this Protocol, the Parties will meet and confer in an effort to agree upon the following:

      a.     List of key custodians;

      b.      Search methodology to be applied, including, but not limited to, search parameters, search terms, predictive coding, and date restrictions; and

      c.      Location of relevant data sources including custodial and non-custodial sources. This includes identifying both accessible and claimed inaccessible sources, data sources that are not proportional to the needs of the case, and storage facilities.

      d.      Reasonable production timelines for production, including potential for rolling productions, including due to COVID-19 restrictions. This provision does not modify any Party's obligations to timely produce documents or seasonably supplement its document production under the applicable rules.

2.    **Search Methodology:** The Parties agree to search for and produce responsive records from sources of hard copy and ESI to the extent such locations may contain responsive information as outlined in Section II.3.

3.    **Location of Hard Copy and ESI:** To the extent the following sources are within the producing party's possession, custody, or control, and identified by the agreed upon-custodian as containing potentially responsive hard copy or ESI, the Producing Party will search the following sources to the extent they are reasonably accessible and the search is proportional:

      a.      Custodians' hard copy files;

      b.      Custodians' local hard drives;

      c.      Custodians' mobile devices;

      d.      Custodians' personal accounts and computers;

  e.  Custodians' personal network drive;

  f.  Custodians' email accounts;

  g.  A custodians' removable or portable media (including, but not limited to, thumb or flash drives, external hard drives, CDs or DVDs);

  h.  Cloud drives or offsite electronic storage of documents;

  i.  Hard copy documents stored off-site;

  j.  Network drives or active server directories (i.e., shared drives);

  k.  Databases;

  l.  Shared email accounts; and

  m.  Other ESI sources that may be later identified.

## III. PROCESSING SPECIFICATIONS & DATA RETENTION

1. ESI may be de-duplicated across custodians using industry standard hash values. A party is only required to produce a single copy of a responsive document. A party may remove exact duplicate ESI according to the MD5/SHA-1 hashing method or hash value matching. However—

  a.  De-duplication shall be performed only at the document family level so that attachments are not de-duplicated against identical stand-alone versions of such documents and vice versa.

  b.  Attachments to e-mails or other documents shall not be disassociated from the parent e-mail or document even if they are exact duplicates of another document in the production.

   c. Paper documents shall not be eliminated as duplicates of responsive ESI.

   d. Metadata identifying all custodians in possession of and collection path for each document that is removed as a duplicate must be produced in the "DUPLICATE CUSTODIANS" field in the Concordance load file subject to any exceptions provided in this Protocol.

**IV. PRODUCTION FORMAT**

 **A. General Provisions**

 1. <u>Populated Fields and Processing</u>. The fields to be populated when producing documents and other things in discovery are set forth in Appendix A.

 2. <u>Metadata Fields and Processing</u>.

   a. The parties acknowledge that metadata may become corrupted or otherwise altered during the ordinary course of business and during collection, review, and production. As such, the parties make no representations as to the accuracy of any metadata that may be produced, but agree that the goal is to retain the integrity of the metadata where possible while reasonably limiting costs.

   b. The parties are not obligated to manually recreate any metadata that cannot be electronically extracted.

   c. The parties have no obligation to collect, review or produce metadata for any documents other than those produced in native format.

3. <u>Load Files</u>. All documents shall be produced in electronic format, with files suitable for loading into a Relativity-compatible litigation support review database. All productions will be produced in the format described in Appendix A.

4. <u>Production Media</u>. The producing Party shall produce all Documents (whether in TIFF, JPEG, or Native Format), Load Files, and on Production Media. Each piece of Production Media shall include a unique identifying label including the following information:

    a. Name of the Arbitration and its AAA case number;

    b. Name of the producing Party;

    c. Date of the production (mm/dd/yyyy);

    d. Bates Number range;

    e. Confidentiality Designation, if any; and

    f. Notes regarding any irregularities in the production.

**B.     Electronically Stored Information**

1. <u>Documents Produced in Native Format</u>. Certain file types—for example, Microsoft Excel spreadsheets and Microsoft PowerPoint documents—can lose significant information and meaning when produced as an image. The parties have therefore agreed to make reasonable efforts to produce Microsoft Excel spreadsheets, Microsoft PowerPoint documents or any file type for which an image cannot be rendered (i.e., video mpeg or audio wave) in native format. The production of documents in native format shall be subject to the following protocol:

    a. Any documents produced in native format shall be produced with a Bates-numbered TIFF image slip-sheet stating the document has been produced in native format, and noting the document's confidentiality designation.

      b.      Any documents produced in native format shall be produced with the "NativePath" field.

      c.      Any document produced in native format shall be given a file name comprised of the document's Bates number and file extension (e.g., LXK00000000.xls).

      d.      Microsoft PowerPoint documents shall be processed with hidden slides, with all speaker notes unhidden, and to show both the slide and the speaker's notes.

      e.      If a document to be produced in native format contains privileged information, it shall be produced in TIFF format with redactions. To the extent that documents that fall under this paragraph contain privileged information and cannot be redacted or produced in TIFF format, such documents shall be logged on a privilege log.

    2.    <u>Documents Produced as TIFF or JPEG Images</u>. All documents except those described in Section V.B.1, above, will be produced in TIFF or JPEG format, according to the following protocol:

      a.      Documents other than those to be produced in Native Format shall be produced as single-page Group IV TIFF images using at least 300 DPI print setting.

      b.      Any track changes, notes, or comments within documents must be displayed on TIFF images.

      c.      If a document is produced in TIFF format but requires color to understand its full meaning and content, the receiving party may, in good faith, request

        that the document be produced in color format. The producing party shall not unreasonably deny such a request, and shall produce such documents in JPEG format.

    d.    Each image (whether JPEG or TIFF) shall have a unique file name, which is the Bates Number of the document.

    e.    Each image shall be branded with its corresponding Bates Number and Confidentiality Designation, using a consistent font type and size. The producing party shall make reasonable efforts to avoid obscuring any part of the underlying image with the Bates Number or Confidentiality Designation.

3.    <u>ESI Date and Time Processing</u>**:** Each Party's ESI should be processed using Coordinated Universal (UTC) Time Zone for all data.

4.    <u>Redaction</u>. If a file that originates in ESI needs to be redacted before production, the file will be rendered in TIFF, and the TIFF will be redacted and produced.

5.    <u>Other ESI That Is Impractical to Produce in Traditional Formats (Including Structured Data)</u>. The parties understand and acknowledge that certain categories of ESI are structurally complex and do not lend themselves to production in native format or other traditional formats. To the extent that a response to discovery requires the production of such ESI—e.g., discoverable electronic information contained in a database—the parties shall negotiate appropriate parameters for producing discoverable information and generating a report in a reasonably usable and exportable electronic file (e.g., Excel, CSV, or SQL format).

    **C.**    **Paper Documents**

1. <u>TIFF Images</u>. Paper documents shall be scanned as single page, Group IV compression TIFF images using a print setting of at least 300 DPI. Each image shall have a unique file name—i.e., the Bates Number of the document—and shall be branded with its corresponding Bates Number and Confidentiality designation, using a consistent font type and size.

2. <u>Database Load Files / Cross-Reference Files</u>. Paper documents shall be provided with: (a) a delimited Metadata file (.dat or .txt) and (b) an image load file (.opt), as detailed in Appendix A.

## V. PRIVILEGE LOG

1. The parties agree to exchange privilege logs that describe the nature of the documents, communications, or other tangible things that are not produced or disclosed in a manner that will enable other parties to assess the claim of privilege, immunity, or other similar claim, without revealing the information itself that is asserted to be privileged or protected, except that:

> a. The parties agree that the following categories of documents need not be included on a party's privilege log: (a) communications to or from a party's employees, agents, and representatives and from or to a party's in-house or outside legal counsel relating to this Arbitration or the litigation pending in Federal Court, (b) any work product of counsel and Parties relating to this Arbitration or the litigation pending in Federal Court, (c) any internal communications within a law firm relating to this Arbitration or the litigation pending in Federal Court, (d) any communications regarding litigation holds or preservation, collection, or review in direct connection with this Arbitration or the litigation pending

        in Federal Court, and (e) communications dated on or after the filing of this lawsuit filed in Federal Court to or from outside legal counsel retained by a Party as trial counsel in this lawsuit need not be included on a privilege log; and

    b. Activities undertaken in compliance with the duty to preserve information (including, but not limited to, litigation hold letters) are protected from disclosure under Federal Rules of Civil Procedure 26(b)(3)(A) and (B).

2. The parties agree that all privilege logs shall include, but not be limited to, the following information:

    a. The date of the document;

    b. The author of the document;

    c. The identity of all persons designated as addressees, copyees, or blind copyees;

    d. The identity of any attorney named on the privilege log in italics;

    e. A description of the contents of the document that, without revealing information itself privileged or protected, is sufficient to understand the subject matter of the document and the basis of the claim of privilege or immunity;

    f. The type or nature of the privilege asserted (e.g., attorney-client privilege, work product doctrine, etc.); and

    g. For redacted Documents only, the Bates Numbers corresponding to the first and last page of any Document that has been redacted.

3.      Each member of a family of a document (i.e., each member of a set of documents in a parent-child relationship) that is withheld or redacted on grounds of privilege or immunity shall be identified individually (e.g., email attaching memorandum), but members of the same family—to the extent that such members are also withheld or redacted—may be logged together as a single entry on the privilege log, if the description of the single entry is sufficient for the receiving party to evaluate the claim of privilege or immunity for each redacted or withheld family member.

4.      Any email chain (i.e., a series of emails linked together by email responses and/or forwarding) that is withheld or redacted on grounds of privilege or immunity may be logged together as a single entry on the privilege log, and may be identified/logged by the top-most email in the chain that is withheld or redacted.

| /s/ Adam J. Sedia | /s/ Blake A. Roter |
|---|---|
| Kevin G. Owens<br>Adam J. Sedia<br>Johnson & Bell<br>33 West Monroe Street, Suite 2700<br>Chicago, Illinois 60603<br>312-372-0770<br>312-372-9818 (facsimile)<br>*Attorneys for Plaintiff/Counter-Defendant Cintas Corporation* | Blake A. Roter<br>Burke, Warren, MacKay &Serritella, P.C.<br>330 N. Wabash Ave, 21st Floor<br>Chicago, Illinois 60611<br>312-840-7000<br>312-840-7900 (facsimile)<br>*Attorneys for Defendant/Counter-Plaintiff Jupiter Aluminum Corporation* |

## APPENDIX A

## REQUESTED LOAD FILE FORMAT FOR ESI

Image file format should be an Opticon (.OPT) load file.

| Field | Comment |
|---|---|
| Field one | Page identifier |
| Field two | Volume identifier, not required, but must include a space |
| Field Three | Path to image file |
| Field four | document marker, Y indicates start of a new record |
| Field five | Blank field can be used to indicate box |
| Field six | Blank field can be used to indicate folder |
| Field seven | Blank can be used to store page count |

## METADATA FIELDS

### Detail for .DAT delimited file:

| Field | Comment |
|---|---|
| BEGBATES | Beginning Bates number assigned to each document |
| ENDBATES | Ending Bates number assigned to each document |
| BEGATTACH | Beginning Bates number assigned to the group of documents to which the parent document and any attachment documents are associated |
| ENDATTACH | Ending Bates number assigned to the group of documents to which the parent document and any attachment documents are associated |
| CUSTODIANS** | Person, file share or other source which files were originally collected |
| DUPLICATE CUSTODIAN** | Names of all custodians from whom copies of the document that was eliminated through de-duplication was collected to the extent not included in the CUSTODIAN field |

| RECORDTYPE | The type of record (e.g., email, attachment) |
|---|---|
| DOCTYPE | Document type as identified by metadata associated with the native document indicating the application that created the native document (e.g., Google Docs, Microsoft Word 6.0, Gmail, Outlook Email, etc.) |
| EMAILSUBJECT | The subject line of a produced email |
| AUTHOR | The Author of a document |
| FROM | The "From" line of a produced email |
| TO | The "To" line of a produced email |
| CC | The "CC" line of a produced email |
| BCC | The "BCC" line of a produced email |
| DOCDATE | Date sent or Date received or Date last modified or Date created (In this hierarchy) |
| PARENTDATE | DocDate of Parent Record. This field allows for attachment families to sort together. |
| DATESENT* | The date an email was sent |
| TIMESENT* | The time the email was sent, with time zone normalized across all produced records |
| DATERCVD* | The date an email was received |
| TIMERCVD* | The time the email was received, with time zone normalized across all produced records |
| DATECREATED* | The date document was created |
| TIMECREATED* | The time document was created |
| DATELASTMOD* | The date that a document was last modified |
| TIMELASTMOD* | The time that a document was last modified |
| FILEFOLDER | Fully qualified original path to the source file. Includes path up to and including internal path of containers. |
| FILENAME | The filename of a produced document |

| FILEEXT | The file extension (e.g., .txt or .pdf) of a produced document |
| --- | --- |
| FILESIZE | The file size (in bytes) of a produced document |
| MD5HASH | Programmatic unique hash value of a produced document |
| NUMATTACH | The number of attachments to a document |
| PGCOUNT | The page count of the native document |
| NATIVEPATH | The location of the produced native version of a document |
| CONFIDENTIALITY | Confidential designation under Protective Order (if applicable) |
| TEXTPATH | The location of the extracted text/OCR text for a document |
| Production Volume | Volume of Production |

*As to the date and time metadata fields included in the metadata fields above, the Producing Party reserves the right to produce as a single field (e.g. DATECREATED = DATECREATED + TIMECREATED) since the metadata may already be exported and logged as such.

** As to the CUSTODIAN and DUPLICATE CUSTODIAN metadata fields above, the Producing Party reserves the right to produce as a single field (e.g. CUSTODIAN = CUSTODIAN + DUPLICATE CUSTODIAN) since the metadata may already be exported and logged as such.